**KETCHIKAN PULP COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 171–88C.

United States Claims Court.

April 30, 1990.

Charles L. Cloudy, Ketchikan, Alaska, for plaintiff.

Catherine A. Christman, and Sean P. Morgan, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant; William McGinnies and Alan Campbell, Dept. of Agriculture, of counsel.

## OPINION

MARGOLIS, Judge.

This government contracts case is before the court on defendant's motion for summary judgment and plaintiff's cross-motion for partial summary judgment. Plaintiff appeals an adverse final decision of the contracting officer under the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.* The contracting officer found that plaintiff had inexcusably breached its contract, and that the government did not contribute to that breach. The government filed a counterclaim to recover the damages resulting from plaintiff's breach, a sum of $5,149,241 plus interest. After consideration of the entire record, and after hearing oral argument, the court finds that the government met its duty to mitigate, and is entitled to recover damages for the breach. The defendant's motion for summary judgment is granted, and the plaintiff's motion for partial summary judgment is denied.

## FACTS

On December 5, 1980, the plaintiff, Ketchikan Pulp Company (Ketchikan) entered into Contract No. 05–262 with the United States, through the Forest Service, United States Department of Agriculture, to harvest and purchase timber from the Tongass National Forest in Alaska. The contract provided that Ketchikan would purchase approximately 48,820 MBF (thousand board feet) of timber at a weighted average price of $200.60 per MBF; and would complete the harvesting on or before December 31, 1985. By that date, Ketchikan had harvested only 17,609 MBF, or approximately 36% of the timber it had contracted to purchase.

On November 27, 1985, the Forest Service offered to extend the contract for another five years, but Ketchikan declined that offer and allowed the contract to expire with the bulk of the harvesting uncompleted. As a result, on January 14, 1986, the Forest Service notified plaintiff that the contract was terminated and that the resulting damages would be assessed against Ketchikan.

The timber was offered for resale in June 1986. On July 2, 1986, the Forest Service resold the remaining timber to the highest of three bidders for $1,296,560, or a weighted average price of $39.72 MBF. Using the damages formula provided for in paragraph B9.4 ("Failure to Cut") of the contract, the Forest Service in a final decision issued March 19, 1987, assessed damages of $5,149,241 against Ketchikan. To arrive at that figure, the contracting officer determined the difference between the current contract value of the remaining uncut timber and the new contract price, added the costs associated with the resale itself, and subtracted credits to Ketchikan's account.

On March 15, 1988, Ketchikan filed this suit appealing the contracting officer's final decision. Plaintiff does not challenge the method by which the contracting officer arrived at the amount of damages, nor the data upon which his calculations were based. Instead, Ketchikan argues that the amount of damages assessed is inflated because the Forest Service failed to fully mitigate its damages. As the basis for this claim, plaintiff asserts that the defendant knew or should have known that, in light of the depressed timber market, it could have realized a significantly higher price by delaying the resale of the timber contract for another year. After the expiration of that time, both the plaintiff and another large logging company, Alaska Pulp Company, would have been eligible to bid on the sale. Further, plaintiff argues that, had the Forest Service accurately predicted the forthcoming upswing in the timber market, it would have determined that a delayed sale would have more perfectly mitigated the damages resulting from the plaintiff's breach and reduced the defendant's damages by an amount in excess of $1,000,000.

Defendant argues that it fully met its contractual duty to mitigate damages by promptly reselling the timber in accordance with the contract and in accordance with agency policy set forth in the Forest Service Manual. Defendant argues that its duty to mitigate damages does not require it to wait an indefinite period of time to resell at the highest possible price. Rath-

er, defendant argues that it properly mitigated its damages by reselling within a reasonable time, at a reasonable price.

## DISCUSSION

■ Plaintiff correctly points out that the government has a duty to mitigate its damages when a purchaser or seller breaches its contract with the United States. *Churchill Chemical Corp. v. United States*, 221 Ct.Cl. 284, 288, 602 F.2d 358, 361 (1979). Under the doctrine of mitigation, the contractor in breach should not be charged with damages which the government could have avoided with reasonable effort and without undue risk or expense. *See generally, Corbin on Contracts*, (Vol. 5, § 1039), and J. Cibinic and R. Nash, *Administration of Government Contracts*, (2d ed., 2d printing, 1986) at 773–75. On the other hand, the government is not required to make extraordinary efforts to ferret out the single best situation which will absolutely minimize the breaching party's damages. All that is required is that the government act reasonably and promptly given the circumstances. So long as the government acts reasonably, the defaulting contractor bears the risk of the changing market during a reasonable interval for reletting the contract.

■ The defaulting contractor bears the burden of showing that the government could have mitigated its losses through reasonable effort and expense. If the contractor establishes a *prima facie* case, the burden of showing mitigation shifts to the government. *Forest Environmental Services Company, Inc. v. United States*, 5 Cl.Ct. 774, 780 (1984) (*FESCO*) (citations omitted). Plaintiff may be able, using hindsight, to show that market conditions in fact improved significantly one year after the contract was relet, so that a delayed sale would have lowered the Forest Service's damages. But that is not the standard by which the Forest Service's conduct is to be judged. Mitigation does not require prescience; it requires reasonableness. And while it is always difficult to define the term, it is clear that the "reasonableness" of any action must be judged by the facts and circumstances at the time the action is taken. *Toyota Industrial Trucks U.S.A., Inc. v. Citizens National Bank of Evans City*, 611 F.2d 465, 471 (3rd Cir. 1979).

■ The Forest Service Manual requires that timber remaining uncut after a contract has expired uncompleted "shall be offered for sale promptly, unless there is an overriding reason not to do so." (FSM 2433.53). In the present case, there was no overriding reason not to reoffer promptly, and the Forest Service did reoffer the timber for sale promptly. In fact, the Forest Service acted within six months of the default termination, as it was instructed to do by the directive of May 24, 1983 from J.B. Hilmon, Associate Deputy Chief, Forest Service, to Regional Foresters. The Forest Service conducted the resolicitation fairly and in the same manner as the original solicitation: advertising the sale in accordance with regulations, and reselling through sealed bids followed by oral auction.* In *FESCO*, the Claims Court held that "mere passage of time alone does not mean that the government failed in its duty to mitigate damages." *Id.* In this case, the mere non-passage of time will not establish a failure to mitigate, either. The Forest Service did not race to resell to take advantage of the depressed timber market. Rather, the Forest Service reappraised the timber promptly and advertised for resale within six months, in accordance with the agency's policy.

■ Next, plaintiff alleges that the Forest Service would have obtained a higher price on the resale of the defaulted timber contract if it waited until both Ketchikan

* Plaintiff argues that the method of resale—sealed bid followed by oral auction—depressed the resale price. Forest Service Manual 2433.51 states that the preferred practice is "[p]rompt advertisement under the original contract provisions [which] facilitates determination and collection of damages." The resale was conducted in the same manner as the original sale. In light of plaintiff's allegations about the depressed market and the relative dearth of eligible bidders, plaintiff has come forward with no evidence, but only bare allegations, that sealed bidding alone would have generated a higher bid in this instance.

and another major contractor, the Alaska Pulp Company, became eligible to bid. Although plaintiff presented no evidence for that claim, Ketchikan may indeed be able to show that the government would have obtained a higher price at the resale had it permitted plaintiff to bid. However, the Court of Claims has held that refusing to permit a defaulted contractor to participate in the resale of its own defaulted contract does not violate the government's obligation to mitigate damages. *Siller Brothers, Inc. v. United States*, 228 Ct.Cl. 76, 85, 655 F.2d 1039, 1045 (1981), *cert. denied*, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982). Also, the Forest Service, prior to default, offered to extend the contract for an additional five years, but plaintiff declined the offer. Furthermore, there is no requirement that the government delay its resale to await the entry of other bidders into the fray. Contracts have been found to be properly relet, even when only one bidder participates, and even when the resale price is higher than the original. *See, e.g., H & H Manufacturing Company, Inc. v. United States*, 168 Ct.Cl. 873, 884–85 (1964).

Plaintiff seeks to hold the Forest Service to an impossibly high standard for mitigation. Although the agency is charged with administering timber sales, it cannot be expected to predict with perfect accuracy the state of the future market. Carried to its logical extreme, the plaintiff's argument would prevent the Forest Service from ever collecting damages resulting from a defaulted timber sales contract because it might always be able to resell the timber at a higher price some time in the future. *Columbia Helicopters, Inc.*, 87–3 B.C.A. (CCH) ¶ 20,087 at 101,693, 1987 WL 41247.

There is no evidence whatever that the resale was conducted improperly, illegally or negligently. Plaintiff's only argument is that, if the Forest Service had delayed the resale, it could have gotten a better price. This allegation, even if true, is insufficient to establish a *prima facie* case of a failure to mitigate. If the Forest Service had delayed its sale, in contravention of its policy, and the market, instead of improving, in fact plummeted prior to the resale, plaintiff would have been permitted to avoid payment of those damages arising from the government's unreasonable delay. Requiring the government to delay resale of the timber in anticipation of potential market swings would unfairly shift the risk of market volatility from the defaulting party to the injured party. Such is not the object of the doctrine of mitigation.

## CONCLUSION

Summary judgment is appropriate where, as here, there are no genuine disputes as to material facts. RUSCC 56(c). The plaintiff has failed to make a *prima facie* showing that the defendant failed to mitigate the damages resulting from the plaintiff's default of the timber sales contract. Therefore, for the reasons stated above, the defendant's motion for summary judgment is granted, and the plaintiff's cross-motion for partial summary judgment is denied. Accordingly, the Clerk will dismiss the complaint. The Clerk will enter judgment for the defendant on its counterclaim in the amount of $5,149,241. Each party will bear its own costs.